HUTTON (UNITED STATES v.). See Cases Nos. 15,433–15,435.

---

## Case No. 6,963.

### HUTZ v. KARTHAUSE.

[4 Wash. C. C. 1.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1820.

BILL OF EXCHANGE—PROTEST—PROMISE TO PAY—NOTICE.

1. The defendant accepted an order to pay certain debts, out of the proceeds of a bill of exchange, which bill was protested for non-payment. The plaintiff declared upon this promise. The bill not being paid, the obligation was at an end; and the plaintiff failed in his action, so far as it was founded upon that promise.

[Cited in Catlin v. Jones, 1 Pin. 132; Corwith v. Morrison, Id. 491.]

2. When the defendant promised to account for the proceeds of a bill of exchange remitted to him as soon as the fate of the bill should be decided, the clear meaning of the undertaking was, to pay, provided the bill should be paid.

3. The principle of law, which requires notice of the dishonour of a bill to be given by the holder of it, or by an agent, requires notice to be given only to those persons to whom the owner of a bill has a right to look for payment. Third persons, who are not liable on account of the dishonour of a bill, and could look to no person on the bill for indemnification, or for payment of it; are not entitled to notice.

[Cited in West Branch Bank v. Fulmer, 3 Pa. St. 401.]

This is an action on the case by the surviving trustee, for the creditors of one Bur-

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

kle, to recover the amount of a bill of exchange, dated the 20th of July 1814, drawn by Elbert on Baring & Co. of London, for £894 sterling, in favour of Burkle, which he deposited with the defendant to remit and collect. On the 21st of September 1814, Burkle gave an order on the defendant, to pay the amount of the said bill to Slessman and the plaintiff; the two trustees; in the following words: "on receiving advice of the acceptance by Messrs. Baring & Co. of London, of Elbert's bill of exchange on Baring & Co. in favour of, and indorsed by me to you, for $894 sterling, please pay to George Slessman and Hutz, or order, such balance as may be due to me on account of said bill, after deducting therefrom the $800 advanced to me by you, on account thereof." The acceptance of the order was in the following words: "the amount due me is $289 25 cents for premium of insurance; $583 79 cents balance per account current; and $500 advanced you in Philadelphia; in all, $1373 4 cents, which being deducted out of the proceeds of the bill on London, I promise to account for the balance to the abovementioned gentlemen. The second count is on a special agreement, to account for the balance of the aforesaid bill, and is founded on the above acceptance. The third count is on a special agreement to charge Crafts with the amount of this bill, and to account with the plaintiff for the same; and is founded on the following letter from the defendant's clerk to Burkle, dated 4th of February 1815: "as soon as the fate of the bill is decided, I will account with your creditors in due time. As Crafts is responsible for the bill on London, I shall charge the amount to him, and be responsible for the same to your creditors." The fourth count is upon a promise to pay the amount of the bill to the plaintiff, and is founded on a letter from the defendant to Slessman, dated the 26th of June 1815, in which he says that the business of Elbert and Crafts has become troublesome, and that he expects at last to become a large sufferer; and then adds: "when my partner comes to Baltimore, which will be soon, we will try to render Burkle's account current, and settle the balance with you." The first count is general indebitatus assumpsit, for money had and received.

1. Upon the special counts it was contended by the plaintiff's counsel, that the promises contained in the above acceptance and letters fully support the charges, and are either of them sufficient to bind the defendant to pay the bill, subject to the deductions stated in the acceptance.

2. That the defendant is liable on the ground of neglect, in not giving due notice to the plaintiff of the dishonour of the bill, which was protested for non-payment, in December 1814, and the first notice which the plaintiff received of it from the defendant was on the 1st of July 1815; although,

in the defendant's account, he debited the cost of the protest on the 9th of May 1815. Cases cited: Kyd, Bills, 76; Chit. 246, 247, 322; 3 Bos. & P. 599; 6 East, 3; 12 East, 227; 5 Mass. 167; 4 Term R. 320.

For the defendant it was contended, that the acceptance, as well as the special promises relied on, were all contingent, and depended on the ultimate fate of the bill. That if otherwise, still the promises were made without consideration, and therefore were not binding. The doctrine in Pillans v. Van Mierop [3 Burrows, 1663] is confined to negotiable instruments of a commercial nature, in the hands of a third person. Cases upon the point of a want of consideration: 1 Com. Cont. 13, 14, 19; 1 Sandf. 110; 3 Johns. 100.

2. As to the failure to give notice of the dishonour of the bill, the cases read on the other side apply to the holders, and the previous parties on the bill. The agent guilty of this neglect may be answerable over to his principal, in a proper action, to charge him; but not otherwise. Chit. 177.

Mr. Randall and Joseph R. Ingersoll, for plaintiff.

Chauncey & Binney, for defendant.

WASHINGTON, Circuit Justice (charging jury). This is an action of assumpsit, founded upon three separate and distinct promises; and the declaration contains three special counts founded upon these promises, and a general count for money had and received. Some observations were made by the counsel for the defendant upon these special counts, to show a variance between them and the promises given in evidence to support them; and also the insufficiency of the consideration stated as the ground of the different undertakings. Not considering it necessary, in this case, to give any opinion upon these points, and wishing to place the cause before the jury upon its real merits; I shall pass over all objections to the form of the declaration, and examine the case upon the true construction of the promises themselves, which are all in writing.

The first promise referred to in the declaration, and relied upon by the counsel for the plaintiff, is contained in an order drawn by C. J. Burkle on the defendant, dated the 21st of September 1814, in favour of the plaintiff and George Slessman, in the following words, viz.: "On receiving advice of the acceptance by Messrs. Baring & Co. of London, of Elbert's bill of exchange on said Baring & Co. in favour of, and indorsed by me to you, for £894 sterling, please pay to George Slessman and Hutz, or order, such balance as may be due to me on account of the above bill, after deducting therefrom the $800 advanced to me by you on account thereof." The acceptance of this order was underwritten in the following

terms. "The amount due me is $289 25 cents for premium of insurance, $583 70 cents balance per account current, and $500 advanced you in Philadelphia; in all $1373 4 cents, which being deducted out of the proceeds of the bill on London, I promise to account for the balance to the above mentioned gentlemen." If the defendant's acceptance of this order had been general, it is perfectly clear, that his undertaking would have been to pay the balance of the amount of the bill, as soon as he should have received advice of its acceptance. And it would be equally clear, that the dishonour of the bill would have discharged the defendant from the obligation he assumed, which was made to depend upon the acceptance of the bill on London. The contract created by the special acceptance, was made equally to depend upon a contingency, though of a different kind, that is, the payment of the bill; because, it is to pay out of the proceeds of the bill, and if the bill should prove unproductive, there could be no proceeds; and consequently the event upon which the obligation to pay was to arise, not having happened, the obligation itself was at an end. In this case, the bill was protested for non-acceptance and non-payment, and the plaintiff must necessarily fail in his action, so far as it is founded upon this promise.

The second promise, which is styled by the plaintiff's counsel the guarantee of the bill on London, was made in a letter addressed by the clerk of the defendant to Burkle, (not to the plaintiff or to Slessman,) under date of the 4th of February 1815, to the following effect, viz. "as soon as the fate of the bill is decided, I will account with your creditors in due time." In a postscript he adds: "as Crafts is responsible for the bill on London, I shall charge the amount to him, and be responsible for the same to your creditors." The authority of the clerk to write this letter is not questioned; and the only point in controversy between the parties in respect to it, is its just and legitimate construction. It is perfectly obvious, that the body of the latter and the postscript, taken separately, or together, contain two independent and dissimilar promises. The first is, to account with the creditors or Burkle as soon as the fate of the bill should be decided: that is, as I understand it, if the bill should be paid, he would pay to the creditors so much of the amount as they were entitled to, agreeably to the defendant's acceptance of the 21st of September; or if not paid, he would account for the bill. It would be quite unreasonable to construe this promise into an agreement to account for the amount of the bill, whether it was paid or not; not only because such a promise would be inconsistent with the obligation which the acceptance of the 21st of September laid him under, but because the writer, if he had so intended, would probably, and might as well

have said at once, that he would pay the bill at all events. This promise, so construed, is both future and contingent. The second promise is to charge the bill to Crafts, as he is responsible for it, and to pay the amount to the creditors; which, if rightly construed by the plaintiff's counsel, is a promise to pay immediately and unconditionally. Now, that the writer could have intended to make two promises, so different from and inconsistent with each other, cannot fairly be presumed; and it is our duty to give a reasonable construction to this letter, such as the expressions used will sanction. Taking the two promises together, I understand them to mean, that the defendant would account to the creditors for the proceeds of the bill, in case it should be paid by the drawees; or if not, that he would charge the bill to Crafts, if, as the writer supposed, he was responsible for the same; and in that event also, would become himself responsible to the creditors of Burkle. The word as, in the postscript, is clearly used to express a condition or the consideration of the undertaking. As if the writer had said, "although the bill should be dishonoured in London, yet in consideration of the responsibility of Crafts to pay it, I will charge it to him and account for the same to your creditors." That Slessman so understood this letter is obvious from his subsequent letters to the defendant, in which he always speaks of the impatience of the creditors and requests information respecting the bill. But if the defendant was bound to pay it at all events, whether Crafts was responsible for it or not, the fate of the bill was altogether an unimportant matter to the creditors, and the defendant was liable to be called upon for payment of it, as soon as the promise was communicated. No doubt the defendant supposed that Crafts was responsible for the bill, either because he believed him to have been a partner of Elbert, the drawer, or upon the ground of the promise made in Crafts's letter to the defendant, of the 6th of January 1815, to make himself responsible for the bill. But if the defendant's belief of Crafts's responsibility was founded upon this letter, he should have recollected that the promise was conditional, and had neither been accepted, nor was the condition performed by the defendant. The truth is, that the defendant was altogether mistaken in the opinion he had formed upon this subject, both as to the fact and the law; for Crafts does not appear at any time to have been responsible for this bill. There was therefore a total failure of the consideration which induced the promise, and consequently, the promise itself ceased to have any obligation upon the defendant. Or, to speak, perhaps, more correctly, the promise never was obligatory upon him, as it was induced by, and founded upon a mistake of an important fact. The third promise has

not been much relied upon by the plaintiff's counsel, and may therefore be passed over with this remark, that the promise contained in the defendant's letter of the 26th of June 1815, being "to render Burkle's account, and to settle the balance with Slessman," no proof of its breach has been given, since it has not been shown, nor is it pretended that the balance of that account was against the defendant.

2. The second ground taken by the plaintiff's counsel on which to fix the responsibility of the defendant, is, his neglect of the duty of an agent to give timely notice to the plaintiff or to Slessman, as well as to the drawer and indorser of this bill, of its dishonour. To this claim there appear to the court, to be two or three insurmountable objections. 1. In the first place there is no count in the declaration under cover of which this claim can for a moment be asserted. It certainly is not embraced by the general count, since it cannot be pretended that the mere omission of an agent to give notice to his principal of the protest of a bill placed under his care, is evidence of money had and received to the use of the principal. The other counts are founded upon special undertakings to pay this bill, and have not the most remote reference to a charge against the defendant for neglect and breach of duty. 2. In the next place, the defendant never was the agent of Slessman and the plaintiff. The bill was placed in his hands for collection by Burkle, previous to his order of the 21st of September in favour of Slessman and Hutz; he was directed to pay the amount of the bill to those persons, which he agreed to do out of its proceeds. But the bill itself was not transferred to Slessman and Hutz, nor did the defendant act or profess to act as their agent. They had a right to inquire, as they frequently did, respecting the fate of the bill, because they had an interest in its proceeds when paid. But they had no further or other connexion in the business with the defendant. The dishonour of the bill put an end to their interest in the bill, and to their claim upon the defendant. 3. Lastly—The principle of law which requires notice of the dishonour of a bill to be given by the holder of it, or by an agent, does not apply to a case of this kind. It must be given to all those who are liable to be called upon to pay the bill, that each person may have an opportunity to obtain security from those to whom he has a right to look. But Slessman and Hutz were not on the bill as indorsers. They were liable to no person on account of the dishonour of the bill, and could look to no person on the bill for indemnification or for payment of it. Burkle, the indorser, and the drawer, were entitled to notice; and if on account of the want of it, Burkle should fail in his recourse against the drawer, it is for him, not for the plaintiff, to call the defendant to account in a proper action.

Upon the whole it is the opinion of the court that the verdict should be in favour of the defendant.

Verdict for defendant.